FILED

2015 Mar-31  PM 01:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **VARONICA L. UDEH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:11-cv-1722-MHH** |
| | ) | |
| **WINN-DIXIE MONTGOMERY, LLC,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Varonica Udeh is a former employee of defendant Winn-Dixie Montgomery, LLC.  In June of 2009, Ms. Udeh went on maternity leave.  The following month, Winn-Dixie terminated Ms. Udeh's employment.  Ms. Udeh contends that Winn-Dixie discriminated against her by terminating her employment while she was on maternity leave.[1]  Winn-Dixie maintains that it terminated Ms. Udeh's employment because she abandoned her job.  Pursuant to Federal Rule of Civil Procedure 56, Winn-Dixie asks the Court to enter judgment in its favor on Ms. Udeh's pregnancy discrimination claim.  (Doc. 25).   For the reasons stated below,

---

[1] Ms. Udeh initially also asserted a claim for negligence.  (Doc. 1, ¶¶ 51–57).  In her response to Winn-Dixie's motion for summary judgment, Ms. Udeh "concedes that she does not have a cognizable negligence claim." (Doc. 29, p. 17).  Therefore, the Court grants Winn-Dixie's motion for summary judgment on that claim.

the Court denies Winn-Dixie's motion for summary judgment.

## I.    STANDARDS OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   To demonstrate that there is a genuine dispute concerning a material fact, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."   Fed. R. Civ. P. 56(c)(1)(A).   "The court need consider only the cited materials, but it may consider other materials in the record."   Fed. R. Civ. P. 56(c)(3).   The Court must view the evidence in the record in the light most favorable to the non-moving party.   *Atheists of Florida, Inc. v. City of Lakeland, Fla.*, 713 F.3d 577, 589 (11th Cir. 2013) (quoting *Johnson v. Booker T. Washington Broad. Serv.*, Inc, 234 F.3d 501, 507 (11th Cir. 2000))**;** *Hill v. Wal-Mart Stores, Inc.*, 510 Fed. Appx. 810, 813 (11th Cir. 2013).   "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may [] give an opportunity to properly support or address the fact" or "issue any other appropriate order."   Fed. R. Civ. P. 56(e).

Winn-Dixie asks the Court to disregard some of the evidence that Ms. Udeh has presented in opposition to the company's summary judgment motion. Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, at the summary judgment stage, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). These objections function like trial objections, and "[t]he burden is on the proponent [of the evidence] to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory committee's note (2010 amendments). If the Court finds that summary judgment evidence will be available at trial in an admissible form, then the Court may consider the evidence when deciding a summary judgment motion even though the evidence is not in an admissible form at the summary judgment stage. For example, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (internal quotation marks omitted). A district court has broad discretion to determine at the summary judgment stage what evidence it will consider pursuant to Rule 56(c)(2). *See Green v. City of Northport*, 2014 WL 1338106, at *1 (N.D. Ala. March 31, 2014).

3

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In January 2009, Winn-Dixie hired Ms. Udeh as an in-store coordinator at the company's Bessemer, Alabama store.   (Doc. 28-1, p. 78).   Ms. Udeh was approximately three months pregnant when she went to work for Winn-Dixie. (Doc. 28-1, pp. 17, 78).   In April or May 2009, Amanda Williams, the front-end manager at the Bessemer store, began asking Ms. Udeh when she would take maternity leave.   (Doc. 28-1, p. 88).   In May or June of 2009, Monica Sledge, the store manager, also asked Ms. Udeh when she would schedule maternity leave. (Doc. 28-1, p. 90).    Ms. Udeh told Ms. Williams and Ms. Sledge that she intended to take maternity leave by the end of June.   (Doc. 28-1, pp. 92–93).

Ms. Udeh asked Ms. Sledge and Ms. Williams for maternity leave request forms.   (Doc. 28-1, pp. 98–100).   Ms. Sledge responded that she did not know how to access Winn-Dixie's maternity leave forms.   (Doc. 28-1, pp. 99, 102).   Ms. Williams told Ms. Udeh that she would print the forms and leave them in the office for her.   (Doc. 28-1, p. 93).   Before going on leave, Ms. Udeh looked for the forms in the office but could not find them.   (Doc. 28-1, p. 101).   Ms. Udeh did not follow up with Ms. Williams when she could not find the forms.   (Doc. 28-1, p. 101).

Ms. Williams was on vacation when Ms. Udeh was ready to begin her maternity leave.   Ms. Sledge told Ms. Udeh to start her leave and complete the

4

forms when Ms. Williams returned.   (Doc. 28-1, p. 99).   Ms. Udeh began her leave on June 11, 2009, a few weeks earlier than she originally planned.   (Doc. 28-1, pp. 94, 98).   She delivered her son on June 20, 2009.   (Doc. 28-1, p. 17).

After having her baby, Ms. Udeh spoke with Ms. Williams about completing the maternity leave forms.   (Doc. 28-1, pp. 156–58).   On June 23 or June 24, 2009, Ms. Udeh picked up the leave forms from Ms. Williams at the store.   (Doc. 28-1, pp. 166–67).   Ms. Williams did not give Ms. Udeh a specific date to return the forms.   (Doc. 28-1, p. 167).   Ms. Udeh does not know the exact date, but she returned the completed forms to the store sometime before July 4, 2009.   (Doc. 28-1, pp. 172–73).

Ms. Udeh gave the completed leave paperwork to Customer Service Lead Tara Warren.   (Doc. 28-1, p. 173; Doc. 28-7, ¶ 7).   Ms. Warren gave the completed forms to In-Store Coordinator Rachel Weston.   (Doc. 28-7, ¶ 8).   Ms. Warren saw Ms. Weston place the forms in the fax machine and heard the machine faxing the leave papers.   (Doc. 28-7, ¶ 9).   After faxing the paperwork, Ms. Weston took the forms to Ms. Sledge in her office.   (Doc. 28-7, ¶ 10).   Ms. Sledge states that she does not know whether Ms. Udeh was ever able to obtain her leave paperwork. (Doc. 28-4, p. 13).

After Ms. Udeh turned in the leave request forms, no one from Winn-Dixie

5

called her or explicitly told her that her request was granted.   (Doc. 28-1, pp. 185;

327–28).   Ms. Udeh "assum[ed] it was granted" when Ms. Sledge told her to pick

up the paperwork when Ms. Williams returned from vacation.   On this point, Ms.

Udeh testified:

> Q.     Are you assuming that she meant your request that you had yet
>        put in would be granted?
>
> A.     Yes.
>
> Q.     Okay.   But you can't testify here today that after you turned in
>        your   paperwork anyone [] told you, Ms. Udeh, your request is
>        granted, correct?
>
> A.     Not so much in those words, but in actions, yes.

(Doc. 28-1, pp. 328–29).   Winn-Dixie's Benefits Department does not have a record

of Ms. Udeh's Leave of Absence Request Form or related documents.   (Doc. 28-8,

p. 13).   The Leave of Absence Request Form states that it should be faxed to

Winn-Dixie's Human Resources Department.   (Doc. 26-2, p. 1).   Ms. Udeh does

not know whether the form was faxed according to these instructions.   (Doc. 28-1,

p. 176).

On July 8 or 9, 2009, Ms. Udeh called Ms. Sledge to see if she could return to

work earlier than originally planned.   (Doc. 29, p. 30; Doc. 28-1, p. 195).   During

the call, Ms. Sledge told Ms. Udeh that the store had given Udeh's position as an

in-store coordinator to Lisa Hubbard because Ms. Hubbard had been at the store

longer than Ms. Udeh.   (Doc. 28-1, pp. 195–96).   Ms. Sledge told Ms. Udeh that she could return to work in a lower-paying cashier position.   (Doc. 28-1, pp. 197–98).   Ms. Udeh agreed to take that position.   (Doc. 28-1, p. 198).[2]

According to Ms. Udeh, she told Ms. Sledge that she needed to call her doctor and confirm that she could return to work early.   (Doc. 28-1, p. 199).   Ms. Sledge told Ms. Udeh to call her doctor and find out whether she could come back to work. (Doc. 28-1, p. 199).   Ms. Sledge also informed Ms. Udeh that she was putting Ms. Udeh on the schedule as a cashier.   Ms. Sledge advised Ms. Udeh that she would be terminated if she did not show up for her shift.   (Doc. 28-1, p. 199).   Ms. Sledge did not tell Ms. Udeh when she was putting her on the schedule.   (Doc. 28-1, p. 199).[3]

After Ms. Udeh contacted her doctor, Ms. Udeh called Ms. Sledge and informed her that the doctor would not let Ms. Udeh return to work until August 12, 2009, after her postpartum checkup.   (Doc. 28-1, pp. 200–04).   Ms. Sledge told Ms. Udeh to let her know when she could come back to work, and the cashier's

---

[2] Ms. Sledge testified that she never told Ms. Udeh she would attempt to find her a lower-paying cashier position.   (Doc. 26-4, p. 1).

[3] Ms. Sledge testified that she gave Ms. Udeh her shift and that she would be working as a Customer Service Lead, which according to Ms. Sledge is "basically the same as an [In-Store Coordinator] except she wouldn't be holding a safe."   (Doc. 26-3, p. 48; Sledge Depo. at 47). Ms. Udeh's position and pay as In-Store Coordinator did not change in the Winn-Dixie computer system.   (Doc. 26-3, p. 50).   Ms. Sledge asserts that she did not have the authority to change Ms. Udeh's position or pay in the computer system.   (Doc. 26-3, pp. 51–52; Doc. 28-4, p. 15).

position would be waiting for her.   (Doc. 28-1, p. 204).   Ms. Udeh did not talk to Ms. Sledge again after that conversation.   (Doc. 28-1, p. 205).[4]

On or around July 13, 2009, Lorre Prisby, co-director of the Bessemer store, called Ms. Udeh.   (Doc. 28-1, p. 206).   Ms. Prisby told Ms. Udeh that the company had terminated Ms. Udeh's employment, and that if Ms. Udeh wanted to come back to the store, she would have to reapply for her job.   (Doc. 28-1, pp. 206–07).   When Ms. Udeh asked why she was terminated, Ms. Prisby told her that her maternity leave paperwork was not on file with the office, and that after six weeks, the computer automatically deletes an employee from the system.   (Doc. 28-1, p. 208). On July 13, 2009, Ms. Udeh had been on maternity leave for fewer than six weeks. (*See* pg. 5, *supra*).   Ms. Prisby testified that she does not know why Ms. Udeh was terminated, and no one contacted Ms. Udeh to tell her that the company was prepared to terminate Ms. Udeh's employment.   (Doc. 28-3, p. 12).

According to Ms. Sledge, Winn-Dixie terminated Ms. Udeh when she failed to show up for her assigned shift.   (Doc. 26-3, p. 54; Doc. 28-4, p. 15). Winn-Dixie's policy provides that "a team member with unexcused Absences for

---

[4] Ms. Sledge has provided conflicting testimony regarding whether Ms. Udeh contacted her again. In a statement prepared under the penalty of perjury on March 31, 2010, Ms. Sledge stated that Ms. Udeh contacted her to tell her she was not coming back to work.  (Doc. 26-4, p. 1).   In her February 10, 2011 deposition, Ms. Sledge testified that she could not remember having another conversation with Ms. Udeh.   (Doc. 26-3, p. 53).

three (3) consecutively scheduled work days will be considered to have abandoned his/her job and will be terminated." (Doc. 28-8, p. 13). Generally, a manager will call an employee who is late or absent. (Doc. 26-3, p. 56; Doc. 28-2, p. 10; Doc. 28-5, pp. 13–14). According to front-end manager Latasha Poe, a manager always calls an employee when he or she does not show up for an assigned shift. (Doc. 28-2, p. 10). Neither Ms. Sledge nor Ms. Prisby knows or remembers whether a manager called Ms. Udeh to find out why she was not at work for her assigned shifts. (Doc. 28-3, p. 12; Doc. 28-4, p. 16).

Ms. Prisby and Ms. Sledge both deny calling Ms. Udeh to tell her she was terminated, and neither knows how Ms. Udeh learned of her termination. (Doc. 26-3, pp. 54-55; Doc. 28-3, p. 11). Ms. Sledge testified that she could not remember whether she or Ms. Prisby keyed Ms. Udeh's termination into the computer, but Ms. Sledge stated that either she or Ms. Prisby must have done so. (Doc. 28-4, p. 19).

Following her termination, Ms. Udeh filed a Charge of Discrimination with the Equal Employment Opportunity Commission. (Doc. 1, p. 12). After investigating Ms. Udeh's charge, the EEOC issued a Dismissal and Notice of Right to Sue on February 24, 2011. (Doc. 1, p. 13). Ms. Udeh filed a complaint in federal court on May 24, 2011. (Doc. 1). After the parties engaged in discovery,

Winn-Dixie filed a motion for summary judgment.  (Docs. 24, 25, 28, 29, 30).

After the summary judgment briefing, Winn-Dixie filed a motion to strike certain

exhibits submitted in opposition to its motion for summary judgment.   The parties

submitted briefs concerning Winn-Dixie's motion to strike.   (Docs. 31, 37, 39).

On October 1, 2014, pursuant to Rules 1 and 56(e) of the Federal Rules of

Civil Procedure, the Court gave Ms. Udeh the opportunity to support her assertion

that Winn-Dixie replaced her with a non-pregnant individual.  (Doc. 48).  Ms.

Udeh responded by filing declarations from herself and Ms. Carmichael.   (Doc. 53).

Winn-Dixie moved to strike these declarations.  (Doc. 54).  On this record, the

Court considers Winn-Dixie's motions to strike and motion for summary judgment.

## III.   WINN-DIXIE'S MOTIONS TO STRIKE

Before the Court may decide whether the summary judgment record contains

disputed material facts that preclude summary judgment on Ms. Udeh's pregnancy

discrimination claim, the Court must determine the scope of the summary judgment

record.   Winn-Dixie asks the Court to strike from the record affidavits from Tara

Warren and Ms. Udeh and a letter from Rachael Weston.   (Doc. 31).   Winn-Dixie

also challenges the declarations of Ms. Udeh and Ms. Carmichael which Ms. Udeh

submitted in response to the Court's order requesting additional supporting

evidence.  (Doc. 54).   The Court disagrees with the arguments that Winn-Dixie

offers in support of its motions to strike.

## A.   Ms. Udeh's Affidavit

Winn-Dixie asks the Court to strike Ms. Udeh's affidavit from the record because "it appears that the Notary Public who notarized the signature on the affidavit witnessed a male." (Doc. 31, pp. 2–3; *see* Doc. 28-6, p. 8). "Courts should not be unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of execution are satisfied." *Hughes v. Amerada Hess Corp.*, 187 F.R.D. 682, 685 (M.D. Fla. 1999) (internal quotation marks omitted) (denying defendant's motion to strike an entire affidavit based on mistakenly worded notary section of affidavit). The notary's use of the male pronoun in reference to Ms. Udeh likely is a typo. The Court will not strike Ms. Udeh's affidavit based on the notary's mistake.

Winn-Dixie also contends that parts of Ms. Udeh's affidavit "contain "inadmissible hearsay, lay witness opinion evidence, are not based upon personal knowledge, and are due to be stricken." (Doc. 31, p. 3). Winn-Dixie asserts that the Court should strike the following statements:

> Statement 1: "When I left work it was widely known among employees and management of the store that I was pregnant and going on maternity leave." (Doc. 28-6, ¶ 12).

> Statement 2: "Ms. Warren said she would give the paper work [sic] to Rachael Weston because Ms. Williams was not there." (*Id.* ¶ 21).

11

Statement 3: "Before leaving the store, Ms. Warren told me Ms. Weston was going to fax in my paperwork."   (*Id.* ¶ 23).

Statement 4: "I thought my leave was granted since I turned in my completed paperwork and obtained a letter from Rachael Weston stating I had been on maternity leave since June 11th."   (*Id.* ¶ 24).

Statement 5: "Dr. Mahmood told me I could not return to work until after my postpartum checkup, which was scheduled for August 12, 2009."   (*Id.* ¶ 35).

Statement 6: "I called Ms. Sledge right back and told her my doctor said I could not return until after my postpartum checkup on August 12, 2009."   (*Id.* ¶ 36).

Statement 1 does not contain hearsay.   It does include Ms. Udeh's opinion that her pregnancy and her intent to go on maternity leave were widely known among Winn-Dixie employees and management.   A lay witness may offer an opinion if it is "rationally based on the witness's perception."   Fed. R. Evid. 701. Ms. Udeh's opinion is rationally based on her perceptions, including discussions that she had with various Winn-Dixie co-workers about her pregnancy and maternity leave.   (*See* Doc. 28-1, pp. 87–92; Doc. 28-4, p. 12–13; Doc. 28-5, p. 11).   Thus, the Court declines to strike statement 1 from the record.

Statements 2 through 6 would constitute inadmissible hearsay if offered for the truth of the matter asserted.   *See* Fed. R. Evid. 801(c) (defining hearsay as "a statement that . . . a party offers in evidence to prove the truth of the matter asserted

in the statement").   However, a statement is not hearsay if it is "offered solely for the fact that it was made and the effect it might have had upon its hearer."   *See United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir. 1986).   Ms. Udeh may offer statements 2 through 6 to establish that the statements were made and to describe the effect that the statements had on her.   Ms. Udeh's testimony that these statements were made is based on Ms. Udeh's personal knowledge.   Therefore, the statements are not hearsay.

In addition, Ms. Warren's statements are admissible because they are admissions by a party opponent.   *See* Fed. R. Evid. 801(d)(2)(D) (a statement is not hearsay if "the statement is offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed"); *see also Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("[C]ourts have admitted statements of managers under Rule 801(d)(2)(D) where there is some evidence that the statements reflected some kind of participation in the employment decision or policy of the employer.").   Therefore, the Court denies Winn-Dixie's motion to strike Ms. Udeh's affidavit.

## B.   Ms. Warren's Affidavit

Winn-Dixie asserts that the Court should strike Ms. Warren's affidavit because Ms. Udeh did not disclose Ms. Warren's affidavit in accordance with Rules

26(a) and 26(e).   (Doc. 31, pp. 3–4).   Rule 26(a) requires a party to provide, without waiting for a discovery request, the names of individuals likely to have discoverable information that the disclosing party may use to support its clams or defenses.   Fed. R. Civ. P. 26(a)(1)(A)(i).   In addition, a party must provide copies of all documents that the party may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(ii).

> Under Rule 26(e):
>
> [a] party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . .

Fed. R. Civ. P. 26(e)(1)(A).   The advisory committee notes to Rule 26(e) state that there is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process."   Fed. R. Civ. P. 26(e) advisory committee's note (1993 Amendment). "District courts in this circuit . . . generally will not strike the testimony of a witness whose role may not have been wholly revealed during the course of discovery. Rather, the focus is on whether the moving party is aware that the affiant is an individual with discoverable information."   *Ojeda-Sanchez v. Bland Farms, LLC*,

2010 WL 2382452, at *1 (S.D. Ga. June 14, 2010); *see also Burden v. City of Opa Locka*, 2012 WL 4764592, at *7–8 (S.D. Fla. Oct. 7, 2012).

Here, Winn-Dixie was fully aware that Ms. Warren was an individual with discoverable information.   In her initial disclosures, Ms. Udeh supplied Ms. Warren's name and phone number and a description of Ms. Warren's discoverable information.   (Doc. 37-2, p. 7).   Ms. Udeh also gave Winn-Dixie a copy of Ms. Warren's statement to the EEOC.   (Doc. 37-1).   Ms. Udeh's initial disclosures, particularly Ms. Warren's EEOC witness statement, put Winn-Dixie on notice that Ms. Warren had discoverable information regarding Ms. Udeh's maternity leave papers.   (Doc. 37-1).   Winn-Dixie could have deposed Ms. Warren or obtained sworn testimony from her, but Winn Dixie chose not to.   Because Winn-Dixie has offered no colorable basis for disregarding Ms. Warren's affidavit, the Court will not strike that affidavit from the record.

Taking a more targeted approach, Winn-Dixie asks the Court to strike several statements in Ms. Warren's affidavit.   Winn Dixie characterizes the statements as inadmissible hearsay.   (Doc. 31, p. 4).   The Court has not relied on any of the statements that Winn-Dixie identifies as hearsay.   Therefore, Winn-Dixie's hearsay objection to particular statements in the Warren affidavit is moot.

**C.     Ms. Weston's letter**

Winn-Dixie contends that Rachel Weston's letter is inadmissible hearsay. (Doc. 31, p. 5).   The Court has not relied on Ms. Weston's letter.   Consequently, Winn Dixie's motion to strike Ms. Weston's letter is moot.

**D.     Winn-Dixie's Motion to Strike Exhibits Submitted in Response to the Court's Order**

Pursuant to Rules 1 and 56(e) of the Federal Rules of Civil Procedure, the Court gave Ms. Udeh an opportunity to support her assertion of fact that Winn-Dixie replaced Ms. Udeh with a non-pregnant employee.   (Doc. 48).   In response, Ms. Udeh supplied the declaration of Emily Carmichael, in which Ms. Carmichael states that she was not pregnant when Winn-Dixie promoted her to the position of In-Store Coordinator.   (Doc. 53-2, p. 2).   Winn-Dixie moved to strike Ms. Carmichael's declaration as "surprise evidence."   (Doc. 54, p. 4).

The Court denies Winn-Dixie's motion to strike.   As noted in the standard of review, Rule 56(e) expressly authorizes a district court to offer a party "an opportunity to properly support or address [a] fact" if the party "fails to properly support an assertion of fact."   Moreover, Rule 1 requires district courts to construe and administer the Federal Rules of Civil Procedure in a manner that "secure[s] the just, speedy, and inexpensive determination of every action and proceeding."   In

her opposition to Winn-Dixie's motion for summary judgment, Ms. Udeh stated that Winn-Dixie replaced her with an employee who was not pregnant.   (Doc. 29, pp. 21–23).   It should come as no surprise to Winn Dixie that Ms. Udeh would try to establish that an employee who was not pregnant replaced her; that is Ms. Udeh's burden under the law.   And it is the Court's option under Rule 56(e), in the interest of a just and efficient determination of this proceeding, to offer Ms. Udeh the opportunity to substantiate her assertion.   The Court exercised that option, and it will not strike Ms. Udeh's response to the Court's invitation.[5]

## IV.    MOTION FOR SUMMARY JUDGMENT

### A.    Ms. Udeh's Pregnancy Discrimination Claim

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of sex.   *See*  42 U.S.C. § 2000e–2(a)(1).   When it adopted the Pregnancy Discrimination Act, Congress amended Title VII to provide that discrimination on the basis of sex includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions."    *Id.*  at § 2000e(k).

---

[5] Winn-Dixie acknowledges that Ms. Udeh listed Ms. Carmichael as a witness in her initial disclosures.  (Doc. 54, p. 5).   Additionally, Ms. Sledge stated in her deposition that Ms. Carmichael filled Ms. Udeh's position.  (Doc. 28-4, p. 20).  Winn-Dixie should not be surprised by Ms. Carmichael's declaration.  (Doc. 54).   To the extent that Winn-Dixie moves to strike portions of Ms. Udeh's submissions that reach beyond the information that the Court gave Ms. Udeh an opportunity to place in the record, the motion is moot because the Court has relied only on Ms. Carmichael's statement that she was not pregnant when Winn-Dixie promoted her to the position of In-Store Coordinator.

Pregnancy discrimination claims are analyzed under the same framework as Title VII sex discrimination claims. *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2004). To prevail under Title VII, a plaintiff must show that her pregnancy "was a motivating factor" for an employment decision. 42 U.S.C. § 2000e–2(m).

A plaintiff may offer direct or circumstantial evidence to support a sex discrimination claim. *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012). Ms. Udeh offers circumstantial evidence of discrimination, so the Court evaluates her claims through the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The first step of the *McDonnell Douglas* framework requires the plaintiff to establish a prima facie case of discrimination by showing that "'(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) [s]he was replaced by a person outside [her] protected class.'" *Winborn v. Supreme Beverage Co., Inc.*, 572 Fed. Appx. 672, 674 (11th Cir. 2014) (quoting *Maynard v. Bd. of Regents,* 342 F.3d 1281, 1289 (11th Cir. 2003)). If the plaintiff makes this showing, she raises a rebuttable presumption of pregnancy discrimination. *Holland*, 677 F.3d at 1055.

Once the plaintiff meets this initial burden, the burden shifts to the employer

to rebut it by articulating a legitimate, non-discriminatory reason for its actions. *Smith v. Lockheed–Martin Corp.,* 644 F.3d 1321, 1325 (11th Cir. 2011). If the employer meets this burden, then the burden shifts back to the plaintiff to "show that the proffered reasons were pretextual." *Gray v. City of Jacksonville, Fla.*, 492 Fed. Appx. 1, 4 (11th Cir. 2012) (quoting *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997)).

### 1. Ms. Udeh can establish a prima facie case of pregnancy discrimination through circumstantial evidence.

The parties do not dispute that Ms. Udeh was a member of a protected class, that she was qualified for her job, and that she suffered an adverse employment action. (Doc. 25, p. 11; Doc. 30, p. 1). There is a genuine issue of material fact as to whether Ms. Udeh was replaced, and if so, who replaced her. Ms. Udeh claims that on July 8 or 9, 2009, Ms. Sledge informed Ms. Udeh over the telephone that Sledge had given Udeh's job to Lisa Hubbard. (Doc. 28-1, pp. 195–96). Ms. Sledge testified that Winn-Dixie "didn't replace [Ms. Udeh's] position," and instead "just moved the particular ISCs around that we had in the store." (Doc. 28-4, p. 20). Ms. Sledge also testified that after Ms. Udeh was terminated, Emily Carmichael applied for and received Ms. Udeh's vacant position. (Doc. 28-4, pp. 20–21). Tara Warren testified that she noticed that Lisa Hubbard had the title of In-Store Coordinator on her nametag. (Doc. 28-7, ¶ 15). Winn-Dixie store co-director

Lorre Prisby maintains that the store never filled Ms. Udeh's position. (Doc. 28-3, pp. 11–12). Thus, whether Winn-Dixie replaced Ms. Udeh, and who replaced her, is a disputed fact that is properly left to a jury to resolve. *See Tolbert v. Briggs and Stratton Corp.*, 510 F. Supp. 2d 549, 554 (M.D. Ala. 2007) ("If an employer could insulate itself from a Title VII suit merely by reassigning a discharged employee's duties to a [non-pregnant] employee but never formally call it a replacement, Congress's intent in enacting Title VII would be thwarted.").

At least one of Ms. Udeh's possible replacements was outside Ms. Udeh's protected class. Ms. Sledge's testimony indicates that Emily Carmichael filled Ms. Udeh's position after Winn-Dixie terminated Ms. Udeh. (Doc. 28-4, p. 20). Ms. Carmichael was not pregnant when Winn-Dixie promoted her to the position of In-Store Coordinator. (Doc. 53-2, p. 2). Therefore, Ms. Udeh can establish a prima facie case of pregnancy discrimination.

### 2. Winn-Dixie articulates a legitimate, nondiscriminatory reason for Ms. Udeh's termination.

Winn-Dixie's proffered reason for Ms. Udeh's termination is job abandonment. Ms. Sledge claims that she put Ms. Udeh on the schedule, but Ms. Udeh did not return to work. (Doc. 28-4, pp. 15, 19). Job abandonment is a legitimate basis for termination. *See Anderson v. JPMorgan Chase & Co.*, 418 Fed. Appx. 881, 884 (11th Cir. 2011); *Perez v. Brands Mart Serv. Corp.*, 2011 WL

3236022, at *11 (S.D. Fla. July 28, 2011).   Therefore, Winn-Dixie has met its

burden of stating a legitimate, nondiscriminatory reason for Ms. Udeh's termination.

### 3. Ms. Udeh presents sufficient evidence to allow a reasonable fact finder to determine that Winn-Dixie's reason for terminating Ms. Udeh was a pretext for discrimination.

Ms. Udeh can show pretext "either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing

that the employer's proffered explanation is unworthy of credence."   *King v.*

*Ferguson Enterprises, Inc.*, 568 Fed. Appx. 686, 688 (11th Cir. 2014) (internal

quotation omitted).   To establish indirect evidence of pretext, Ms. Udeh must show

"that there are 'such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its action that a

reasonable factfinder could find them unworthy of credence.'" *Gray v. City of*

*Jacksonville, Fla.*, 492 Fed. Appx. 1, 4 (11th Cir. 2012) (quoting *Combs v.*

*Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997)).

There are several circumstances surrounding Ms. Udeh's termination that

could cause a reasonable fact finder to doubt Winn-Dixie's claim that it terminated

Ms. Udeh for job abandonment.   First, multiple Winn-Dixie managers testified that

when an employee is late or absent for a scheduled shift, someone from management

calls the employee.   (Doc. 26-3, p. 56; Doc. 28-2, p. 10; Doc. 28-5, pp. 13–14).

However, Ms. Sledge and Ms. Prisby testify that they cannot remember if they called Ms. Udeh, and Ms. Udeh testifies that she did not receive a call.   (Doc. 28-3, p. 12; Doc. 28-4, p. 16).   *See Ritchie v. Indus. Steel, Inc.*, 426 Fed. Appx. 867, 873 (11th Cir. 2011) ("A plaintiff can also show pretext by demonstrating that the employer did not follow its normal procedures in terminating [her] employment."). Additionally, Winn-Dixie has not identified which days Ms. Udeh failed to show up for her scheduled shifts.

Winn-Dixie has also given conflicting accounts of the reason that it terminated Ms. Udeh's employment.   Ms. Sledge claims that Winn-Dixie terminated Ms. Udeh for abandoning her job.   (Doc. 26-3, p. 54; Doc. 28-4, p. 15). Ms. Udeh testifies that Ms. Prisby told her, in a July 13, 2009 phone call, that Winn-Dixie terminated her because her maternity leave paperwork was not on file with the office and that the computer automatically kicks employees out of the system after six weeks.   (Doc. 28-1, p. 208).   *See Ritchie*, 426 Fed. Appx. at 872 ("A plaintiff may establish pretext by demonstrating that the employer has offered inconsistent reasons for the challenged employment action.").

Winn-Dixie does not identify the manager who terminated Ms. Udeh, or the manager who notified Ms. Udeh of her termination.   Ms. Udeh testifies that Ms. Prisby called her and terminated her employment.   (Doc. 28-1, pp. 206–07).   Ms.

Prisby denies calling Ms. Udeh to tell her she was terminated.   Both Ms. Prisby and Ms. Sledge state that they do not know how Ms. Udeh learned of her termination. (Doc. 26-3, pp. 54-55; Doc. 28-3, p. 11).   Additionally, Ms. Sledge states that she cannot remember who entered Ms. Udeh's termination into the computer, although Ms. Sledge testifies that it must have been either herself or Ms. Prisby.   (Doc. 28-4, p. 19).   It strains credibility that the managers at Ms. Udeh's store do not know who terminated Ms. Udeh, or who notified Ms. Udeh of her termination.   Credibility determinations are for a jury, not a Court evaluating a summary judgment motion.

Winn-Dixie also gives conflicting accounts regarding who may have replaced Ms. Udeh after Winn-Dixie terminated her employment.   Ms. Udeh testifies that Ms. Sledge informed her that Winn-Dixie had given Ms. Udeh's job to Lisa Hubbard.   (Doc. 28-1, pp. 195–96).   Ms. Sledge asserted that Winn-Dixie did not replace Ms. Udeh's position, but just moved around the ISCs who were in the store. (Doc. 28-4, p. 20).   Ms. Sledge also stated that Emily Carmichael applied for and received Ms. Udeh's vacant position.   (Doc. 28-4, pp. 20–21).   Ms. Warren saw Ms. Hubbard wearing a nametag that identified Ms. Hubbard as an In-Store Coordinator.   (Doc. 28-7, ¶ 15).   Ms. Prisby states that the store never filled Ms. Udeh's position.   (Doc. 28-3, pp. 11–12).   The lack of clarity regarding whether Winn-Dixie replaced Ms. Udeh's position could lead a trier of fact to doubt

Winn-Dixie's stated reason for terminating Ms. Udeh.

Finally, there is confusion regarding Ms. Udeh's maternity leave papers. Ms. Udeh states that she gave her leave paperwork to Ms. Warren.   (Doc. 28-1, p. 173; Doc. 28-7, ¶ 7).   Ms. Warren testifies that she gave the papers to Ms. Weston, watched Ms. Weston place the papers in the fax machine, and heard the fax machine faxing the papers.   (Doc. 28-7, ¶¶ 8, 9).   Ms. Warren also states that Ms. Weston took the papers to Ms. Sledge's office, and that Ms. Sledge was in the office at the time.   (Doc. 28-7, ¶ 10).   However, Ms. Sledge states that she does not know if Ms. Udeh was ever able to obtain her leave paperwork.   (Doc. 28-4, p. 13). Additionally, Winn-Dixie's Benefits Department does not have any record of Ms. Udeh's maternity leave paperwork.   (Doc. 28-8, p. 13).

Because Ms. Udeh has presented sufficient evidence to permit a reasonable trier of fact to conclude that Winn-Dixie's stated reason for terminating Ms. Udeh is pretext for unlawful discrimination, the Court denies summary judgment as to Ms. Udeh's pregnancy discrimination claim.

IV.   **CONCLUSION**

For the reasons stated above, the Court **ORDERS** as follows:

(1)    The Court **DENIES** Winn-Dixie's motion for summary judgment as to Ms. Udeh's pregnancy discrimination claim and **GRANTS** Winn-Dixie's motion

for summary judgment as to Ms. Udeh's negligence claim (Doc. 24);

      (2)    The Court **DENIES** Winn-Dixie's motion to strike as to Ms Udeh's affidavit, Ms. Warren's affidavit, Ms. Weston's letter, and Ms. Udeh's exhibits submitted in response to the Court's order requesting additional supporting evidence (Docs. 31, 54);

      (3)    The Court directs the clerk to please **TERM** Docs. 24, 31, and 54.

      **DONE** and **ORDERED** this March 31, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE